1  MORRIS POLICH & PURDY LLP
   David J. Vendler, Esq. (SBN 146528)
2  Email: DVendler@mpplaw.com
   Kevin M. Pollack, Esq. (SBN 272786)
3  Email: KPollack@mpplaw.com
   1055 West Seventh Street, Suite 2400
4  Los Angeles, CA 90017
   Tel.:   (213) 417-5100
5  Fax:   (213) 488-1178

6
   Attorneys for Plaintiff CHRISTOPHER J. D'ANGELO
7  and all others similarly situated

8

9                    UNITED STATES DISTRICT COURT

10                   CENTRAL DISTRICT OF CALIFORNIA

11

12  CHRISTOPHER J. D'ANGELO, an          CASE NO.:
    individual on behalf of himself and all
13  others similarly situated,           INJUNCTIVE RELIEF AND CLASS
                                         ACTION COMPLAINT FOR:
14
                Plaintiff,               1. **VIOLATION OF CALIFORNIA'S**
15                                          **CONSUMER LEGAL REMEDIES**
                                            **ACT**
16  vs.                                  2. **NEGLIGENT**
                                            **MISREPRESENTATION**
17                                       3. **INTENTIONAL**
    VOLKSWAGEN GROUP OF                     **MISREPRESENTATION**
18  AMERICA, INC.,                       4. **UNFAIR BUSINESS PRACTICES**
                                         5. **DECLARATORY RELIEF**
19
                Defendant.
20                                          **DEMAND FOR JURY TRIAL**

21

22

23

24      NOW COMES Plaintiff CHRISTOPHER J. D'ANGELO, as an individual

25  ("Plaintiff"), and on behalf of himself and all others similarly situated (collectively

26  "Plaintiffs" or "Class Members"), and complains against Defendant Volkswagen

27  Group of America, Inc. ("VW") as follows:

28

## SUMMARY OF THE ACTION

1. The gravamen of this complaint is that VW misled consumers such as Plaintiff into purchasing certain "clean diesel" automobiles. VW falsely and misleadingly advertised these vehicles in a way so as to indicate that they are cleaner for the environment and more fuel efficient when they are not "clean" or otherwise good for the environment. In fact, these "clean diesel" automobiles produce nitrogen oxide at level increased by a factor of 10 to 40 times above the EPA compliant levels when being driven in normal use. VW intentionally installed electronic cheating devices in these automobiles to detect when they were being tested for emissions so that they would produce compliant emission results for the test. (Hereinafter, these will be referred to as the "defeat device.") At all other times, including normal operation of the vehicles, however, these cars polluted the environment above federal and California-compliant levels. This action seeks damages, rescission and/or restitution from VW of all the moneys paid toward the purchase of these vehicles, (or at least the diminution in value of Plaintiff's vehicle), and to avoid (through injunctive relief) the continuation of the sort of consumer confusion that caused plaintiff to suffer the harm sought to be remedied here.

## PARTIES

2. Plaintiff is, and was at all times relevant herein, an individual residing in Los Angeles County, California. He purchased a "Certified Pre-owned" VW clean diesel Passat from a dealership in Los Angeles County in 2015.

3. Class Members reside in or are located throughout the United States and in foreign jurisdictions and each Class Member either purchased or leased within the United States or its territories and protectorates a VW diesel vehicle that was equipped by VW with the defeat device.

4. On information and belief, Defendant VW is, is and at all relevant times was New Jersey Corporation that is registered to do business in the State of California

**CLASS ACTION COMPLAINT**

as Volkswagen Group of America, Inc. and has sold, designed, distributed and misrepresented the true nature of the following vehicles:

| Model Year | EPA Test Group | Make and Model(s) |
| --- | --- | --- |
| 2009 | 9VWXV02.035N | VW Jetta, VW Jetta Sportwagen |
| 2009 | 9VWXV02.0U5N | VW Jetta, VW Jetta Sportwagen |
| 2010 | AVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2011 | BVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2012 | CVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2012 | CVWXV02.0U4S | VW Passat |
| 2013 | DVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2013 | DVWXV02.0U4S | VW Passat |
| 2014 | EVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2014 | EVWXV02.0U4S | VW Passat |
| 2015 | FVGAV02.0VAL | VW Beetle, VW Beetle Convertible, VW Golf, VW Golf Sportwagen, VW Jetta, VW Passat, Audi A3 |

These vehicles will hereinafter be referenced as ("VW Clean Diesel Vehicles").

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant the Class Action Fairness Act of 2005, 28 U.S.C. 1332(d), because the matter in controversy exceeds $5.0 million exclusive of interest and costs and the named plaintiff and others are citizens of California and the Defendant is not.  There is therefore minimal diversity between the members of the class and the Defendant.  Further, more than two-thirds of the members of the putative Class Members are citizens of states different from that of the Defendant.

6       This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 2201 and 2202.

7.     This Court has personal jurisdiction over the Defendant because, among other things, it regularly does business in the State of California and in this Judicial District, and because it has established minimum contacts with the forum and the exercise of jurisdiction over it will not offend traditional notions of fair play and substantial justice.  The Defendant has voluntarily conducted business and solicited customers in the State of California including in this Judicial District.

8.     Venue is proper in this Judicial District under 18 U.S.C. §1391 and 1965. The Defendant can be found in, have one or more agents in, and/or transact or has transacted business in this judicial district and division.

## CLASS ALLEGATIONS

9.     Paragraphs 1 through 8 above are incorporated herein by reference.

10.     The named Plaintiff brings this action on his own behalf and on behalf of a class of persons similarly situated to him pursuant to Rule 23(a) and 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiff also brings this action as a class action against the Defendant pursuant to the provisions of California Civil Code 1781.

11.     The named Plaintiff seeks to represent a class of:

**All owners or lessees of VW Clean Diesel Vehicles who purchased or leased a new or used vehicle in the Unites States or its territories and protectorates from an authorized VW dealership between 2009 and 2015 that contains software designed to hide the vehicle's true emission levels.**

Plaintiffs reserve the right to amend the definition of the Class following discovery.

12.     Plaintiff does not know the exact size of the Class or the identities of the Class Members since such information is in the exclusive control of Defendant. Plaintiff believes that the Class encompasses hundreds of thousands, if not millions, of individuals who are geographically dispersed throughout the United States.   The number of members in the Class are so numerous that joinder of all Class Members is impracticable.   In addition there is a subclass sought to be represented herein

-4-

**CLASS ACTION COMPLAINT**

comprised of all persons who are Class Members that purchased or leased their vehicle in California.

13. There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individuals. Among these common questions are:

a. Whether VW misrepresented information contained in its applications for certificates of conformity for the VW Clean Diesel Vehicles to the EPA and similar state environmental agencies concerning the auxiliary emission control devices installed in each of the vehicles;

b. Whether VW installed Cheat Devices in each of the VW Clean Diesel Vehicles designed to reduce the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use;

c. Whether VW misrepresented the true nature of the VW Clean Diesel Vehicles to consumers and the public at large in advertisements and written publications concerning the quality and environmental impact of the VW Clean Diesel Vehicles

d. Whether VW acted intentionally in committing its wrongs against the Class;

e. Whether VW Clean Diesel Vehicles which claim to be environmentally "clean" and made in compliance with federal and state emission standards is unlawful, unfair or fraudulent so as to constitute a violation of California *Business and Professions Code* § 17200 *et seq*.;

f. Whether VW Clean Diesel Vehicles which claim to be environmentally "clean" and made in compliance with federal

**CLASS ACTION COMPLAINT**

and state emission standards is unlawful, unfair or fraudulent so as to constitute a violation of California *Business and Professions Code* § 17500 et seq.;

g.     Whether VW's misrepresentations concerning the VW Clean Diesel Vehicles would be misleading to a reasonable consumer;

h.     Whether Defendant knew, or by the exercise of reasonable care should have known, that the misrepresentations and false advertising concerning the VW Clean Diesel Vehicles would be misleading to a reasonable consumer;

i.     Whether Defendant engaged in unfair and deceptive conduct in violation of California *Civil Code* section 1770(a)(5) which prohibits: Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have;

j.     Whether Defendant engaged in unfair and deceptive conduct in violation of California *Civil Code* section 1770(a)(2) which prohibits:  Misrepresenting the source, sponsorship, approval, or certification of goods or services;

k.     Whether Defendant engaged in unfair and deceptive conduct in violation of California *Civil Code* section 1770(a)(7) which prohibits: misrepresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

l.     Whether Defendant should be enjoined from engaging in the conduct complained of herein;

m.     Whether Defendant has been unjustly enriched through the

wrongful conduct set forth herein; and

n.   Whether and how much in punitive damages should be assessed against the Defendant.

14.   The claims of plaintiff are typical of the claims of the members of the classes.  While the specific amounts of money consumers may have paid for their VW Clean Diesel Vehicles may be different -- depending upon the model and year of the vehicle-- the damages suffered by each of the members of the class will be calculable under a single formula, namely the total amount of money class members paid for the VW Clean Diesel Vehicles.  The claims of the representative party do not conflict with the interests of any other members of the Class in that both the Plaintiff and the other members of the Class were subjected to the same wrongful policies, practices and procedures of Defendant.

15.   The named Plaintiff will fairly and adequately represent the interests of the Class.  The named Plaintiff has retained skilled and experienced counsel to represent the Class in class action litigation.

16.   Prosecution of separate actions by individual Class Members challenging Defendant's policies, practices and procedures that have class-wide application and effect would create the risk of inconsistent or varying adjudications with respect to individual Class Members which would establish incompatible standards of conduct for the Defendant.

17.   Prosecution of separate actions would also create the risk of adjudications with respect to individual Class Members which would, as a practical matter, be dispositive of the interests of Class Members who are not parties to those adjudications and would substantially impair or impede their ability to protect their interests.

18.   In adopting and implementing the policies, practices and procedures hereinafter alleged, Defendant has acted, failed to or refused to act on grounds

generally applicable to the Class, thereby making appropriate final injunctive relief or declaratory relief with respect to the Class as a whole.

19.   The class action is superior to other available methods for fairly and efficiently adjudicating the issues concerning whether Defendant's policies, practices, procedures, and conduct concerning its marketing and sale of the VW Clean Diesel Vehicles have class-wide impact and/or are in violation of state and federal law.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

20.   Plaintiff hereby incorporates by reference and pleads the following facts and allegations into all Counts hereinafter alleged:

## A.   VW'S OBLIGATIONS TO REPORT THE INSTALLATION OF AECDS

21.   Light-duty vehicles (such as those at issue here) must satisfy emission standards for certain air pollutants, including NOx.  40 C.F.R. § 86.1811-04.  The EPA administers a certification program to ensure that every vehicle introduced into United States commerce satisfies applicable emission standards. Under this program, the EPA issues certificates of conformity (COCs), and thereby approves the introduction of vehicles into United States commerce.

22.   To obtain a COC, a light-duty vehicle manufacturer must submit a COC application to the EPA for each test group of vehicles that it intends to enter into United States commerce.  40 C.F.R. § 86.1843-01.  The COC application must include, among other things, a list of all auxiliary emission control devices (AECDs) installed on the vehicles.  40 C.F.R. § 86.1844-01(d)(11).  An AECD is "any element of design which senses temperature, vehicle speed, engine RPM, transmission gear, manifold vacuum, or any other parameter for the purpose of activating, modulating, delaying, or deactivating the operation of any part of the emission control system." 40 C.F.R. § 86.1803-01.  The COC application must also include "a justification for each AECD, the parameters they sense and control, a detailed justification of each AECD

**CLASS ACTION COMPLAINT**

that results in a reduction in effectiveness of the emission control system, and [a] rationale for why it is not a defeat device." 40 C.F.R. § 86.1844-01(d)(11).

23.    A defeat device is an AECD "that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use, unless: (1) Such conditions are substantially included in the Federal emission test procedure; (2) The need for the AECD is justified in terms of protecting the vehicle against damage or accident; (3) The AECD does not go beyond the requirements of engine starting; or (4) The AECD applies only for emergency vehicles . . . ." 40 C.F.R. § 86.1803-01.

24.    Motor vehicles equipped with defeat devices, such as those at issue here, cannot be certified. EPA, Advisory Circular Number 24: Prohibition on use of Emission Control Defeat Device (Dec. 11, 1972); see also 40 C.F.R. §§ 86-1809-01, 86-1809-10, 86-1809-12. Electronic control systems which may receive inputs from multiple sensors and control multiple actuators that affect the emission control system's performance are AECDs. EPA, Advisory Circular Number 24-2: Prohibition of Emission Control Defeat Devices — Optional Objective Criteria (Dec. 6, 1978). "Such elements of design could be control system logic (i.e., computer software), and/or calibrations, and/or hardware items." Id.

25.    "Vehicles are covered by a certificate of conformity only if they are in all material respects as described in the manufacturer's application for certification . . ." 40 C.F.R. § 86.1848-10(c)(6). Similarly, a COC issued by EPA, including those issued to VW, state expressly, "[t]his certificate covers only those new motor vehicles or vehicle engines which conform, in all material respects, to the design specifications" described in the application for that COC. See also 40 C.F.R. §§ 86.1844-01 (listing required content for COC applications), 86.1848-01(b) (authorizing the EPA to issue COCs on any terms that are necessary or appropriate to assure that new motor vehicles satisfy the requirements of the CAA and its regulations).

26.     The CAA makes it a violation "for any person to manufacture or sell, or offer to sell, or install, any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use." CAA § 203(a)(3)(B), 42 U.S.C. § 7522(a)(3)(B); 40 C.F.R. § 86.1854-12(a)(3)(ii). Additionally, manufacturers are prohibited from selling, offering for sale, introducing into commerce, delivering for introduction into commerce, or importing, any new motor vehicle unless that vehicle is covered by an EPA-issued COC. CAA § 203(a)(1), 42 U.S.C. § 7522(a)(1); 40 C.F.R. § 86.1854-12(a)(1). It is also a violation to cause any of the foregoing acts. CAA § 203(a), 42 U.S.C. § 7522(a); 40 C.F.R. § 86-1854-12(a).

**B.     VW's WRONGFUL CONDUCT**

27.     According to the EPA, the VW Clean Diesel Vehicles have AECDs that were not described in VW's application(s) for the COC that purportedly covers the vehicles.  According to the EPA, VW manufactured and installed software in the electronic control module (ECM) of the VW Clean Diesel Vehicles that sensed when the vehicle was being tested for compliance with EPA emission standards. The EPA is calling this software the "switch."  The "switch" senses whether VW Clean Diesel Vehicles are being tested or not based on various inputs including (but not limited to) the position of the steering wheel, vehicle speed, the duration of the engine's operation, and barometric pressure.  These inputs precisely track the parameters of the federal test procedure used for emission testing for EPA certification purposes.

28.     During EPA emission testing, the vehicles' ECM ran software which produced compliant emission results under an ECM calibration that VW referred to as

the "dyno calibration" (referring to the equipment used in emissions testing, called a dynamometer). At all other times during normal vehicle operation, the "switch" was activated and the vehicle ECM software ran a separate "road calibration" which reduced the effectiveness of the emission control system (specifically the selective catalytic reduction or the lean NOx trap). As a result, emissions of NOx increased by a factor of 10 to 40 times above the EPA compliant levels, depending on the type of drive cycle (e.g., city, highway).

29. The California Air Resources Board (CARB) and the EPA were alerted to emissions problems with these vehicles in May 2014 when the West Virginia University's (WVU) Center for Alternative Fuels, Engines & Emissions published results of a study commissioned by the International Council on Clean Transportation that found significantly higher in-use emissions from two light duty diesel vehicles (a 2012 Jetta and a 2013 Passat). Over the course of the year following the publication of the WVU study, VW continued to assert to CARB and the EPA that the increased emissions from these vehicles could be attributed to various technical issues and unexpected in-use conditions.

30. VW issued a voluntary recall in December 2014 to address the issue. CARB, in coordination with the EPA, conducted follow up testing of these vehicles both in the laboratory and during normal road operation to confirm the efficacy of the recall. When the testing showed only a limited benefit to the recall, CARB broadened the testing to pinpoint the exact technical nature of the vehicles' poor performance, and to investigate why the vehicles' onboard diagnostic system was not detecting the increased emissions. None of the potential technical issues suggested by VW explained the higher test results consistently confirmed during CARB's testing.

31. It became clear that CARB and the EPA would not approve certificates of conformity for VW's 2016 model year diesel vehicles until VW could adequately explain the anomalous emissions and ensure the agencies that the 2016 model year vehicles would not have similar issues. **ONLY THEN DID VW ADMIT IT HAD**

**DESIGNED AND INSTALLED A DEFEAT DEVICE IN THESE VEHICLES IN THE FORM OF A SOPHISTICATED SOFTWARE ALGORITHM THAT DETECTED WHEN A VEHICLE WAS UNDERGOING EMISSIONS TESTING.**

32.　VW knew or should have known that its "road calibration" and "switch" together bypass, defeat, or render inoperative elements of the vehicle design related to compliance with the CAA emission standards.  This is apparent given the design of these defeat devices.  On information and belief, the software was designed to track the parameters of the federal test procedure and cause emission control systems to underperform when the software determined that the vehicle was not undergoing the federal test procedure.

33.　VW's "road calibration" and "switch" are AECDs' that were neither described nor justified in the applicable COC applications, and are illegal defeat devices.  As a result, the VW Clean Diesel Vehicles do not conform in material ways to the vehicle specifications described in the COC application(s).

34.　Therefore, VW violated section 203(a)(1) of the CAA, 42 U.S.C. § 7522(a)(1), each time it sold, offered for sale, introduced into commerce, delivered for introduction into commerce, or imported (or caused any of the foregoing with respect to) one of the hundreds of thousands of VW Clean Diesel Vehicles. Additionally, VW violated section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), each time it manufactured and installed into these vehicles an ECM equipped with the "switch" and "road calibration."

35.　Despite the above information which VW was aware of, it nonetheless intentionally designed and sold cars intended to mislead consumers and regulators about the emission levels those cars created and the fuel efficiency they produced. Despite publicizing itself as an environmentally conscientious company that created thoughtful cars for people who were environmentally conscious, VW sold expensive cars that produced emissions at level far beyond the levels allowed by federal and state

regulations.  To make matters worse, VW then intentionally and knowingly concealed the truth about the VW Clean Diesel Vehicles.  For some time now, Volkswagen has marketed its VW Clean Diesel Vehicles as low-emission, fuel-efficient cars. In fact, this advertising message has helped make VW the largest seller of diesel passenger vehicles in the United States.

36.    Plaintiff purchased his "Certified Pre-owned" VW Passat from one of VW's authorized dealerships based on VW's specific representations that it was both (1) fuel efficient and (2) environmentally "clean." VW's dealerships are agents of VW and rely for their sales on VW's national advertising campaigns, including the clean air advertisements referred to herein.  Based on the information that is beginning to be published by the E.P.A and other state regulatory agencies, Plaintiff has learned that the VW's representations about his and other Class Member cars were demonstrably false and entirely misleading.  After learning about the information and allegations contained herein Plaintiff immediately called the dealership from where he purchased the car to attempt to rescind the contract, return the car, and obtain reimbursement. The dealership represented to Plaintiff that it could and would not grant Plaintiff his request because VW is responsible for the issues alleged herein – not the dealership. Plaintiff is ready, willing and able to return to VW his vehicle and to rescind his purchase.

37.    Not only is Plaintiff's vehicle now polluting the environment beyond allowable state and federal limits, but the value of the vehicle has instantly plummeted. Additionally, Plaintiff paid a premium for his vehicle based on the misrepresentation that it was not only fuel efficient, but that it was "clean" for purposes of the environment.   Plaintiff would not have paid this additional premium but for the misrepresentations of VW.

38.    Additionally, once VW comes up with a way to retool its emission system in the VW Clean Diesel Vehicles, there is a substantial risk that the vehicles' fuel efficiency and performance will become compromised to Plaintiff's detriment.

### FIRST CAUSE OF ACTION

### Violation of the Consumers' Legal Remedies Act

39.   Each of the above allegations is incorporated herein.

40.   California *Civil Code* Section 1750 et seq. (entitled the Consumer's Legal Remedies Act) provides a list of "unfair or deceptive" practices in a "transaction" relating to the sale of "goods" or "services" to a "consumer."   The Legislature's intent in promulgating The Consumer's Legal Remedies Act is expressed in California *Civil Code* Section 1760.  That statute provides, inter alia, that its terms are to be:

> "construed liberally and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."

41.   In the context of the Consumer's Legal Remedies Act, the term "goods" is defined in California *Civil Code* Section 1761(a) as:

  a.  "tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including goods which, at the time of the sale or subsequently, are to be affixed to real property, whether or not severable therefrom."

  b.  "Consumer" is defined in California *Civil Code* Section 1761(d) as: "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family or household use."

  c.  "Transaction" is defined in California *Civil Code* Section 1761(e) as: "an agreement between a consumer and any other person, whether or not the contract is enforceable by action, and includes the making of, and the performance pursuant to, that agreement (emphasis added)."

42.   Included within the Consumers Legal Remedies Act ("CLRA") is California *Civil Code* Section 1770.  This section provides a specific list of sales practices the California Legislature has determined should be prohibited because they are unfair or deceptive to consumers.  Like all of the provisions of the CLRA, the Legislature has determined by its enactment of *Civil Code* Section 1760, that the proscriptive provisions of *Civil Code* Section 1770 are to be liberally construed to promote the CLRA's underlying purpose of consumer protection.

43.   Among the list of prohibited sales practices contained in Section 1770 are Subdivisions (a)(2), (a)(3), (a)(5) and (a)(7).  These provisions provide as follows:

*Civil Code* Section 1770.  Unlawful Methods of Competition, Unfair or Deceptive Acts.

(a)   The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

(2)   Misrepresenting the source, sponsorship, approval, or certification of goods or services.

(5)   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.

(7)   Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. (Emphasis added).

44.   In enacting *Civil Code* Section 1770(a)(2), (5) and (7), the Legislature intended to outlaw the misleading marketing of consumer products such as the VW

has done here.  By representing that the VW Clean Diesel Vehicles are "clean" and environmentally compliant when in fact the opposite is true is violative of the above sections of *Civil Code* Section 1770.

45.    As previously alleged, in 2015, plaintiff, who is a "consumer" within the definition of *Civil Code* Section 1761(d), purchased a VW Clean Diesel Vehicle from a dealership in Woodland Hills in California.  The subject VW Clean Diesel Vehicle is a "good" within the definition of Civil Code Section 1761(a).  Plaintiff's purchase of the vehicle was a "transaction" as that term is defined in *Civil Code* Section 1761(e).

46.    It is alleged on information and belief that Defendant's violations of the CLRA set forth herein were done with full awareness of the fact that the conduct alleged was wrongful and that the conduct was motivated solely with the malicious intent of increasing profits notwithstanding the existence of the above stated laws.  It is also alleged on information and belief that the Defendant did these acts knowing the harm that would result therefrom to consumers, and did these acts notwithstanding that knowledge.

47.    As a direct and proximate result of Defendant's violation of the CLRA, plaintiff, and all of the members of the California subclass of similarly situated persons have suffered damages and are entitled to the following relief:

(1)    An order enjoining Defendant from continuing its offending practices;

(2)    Restitution of all money paid by consumers for the offending vehicles;

(3)    Punitive damages; and

(4)    Attorneys' fees.

48.    Prior to the filing of this complaint plaintiff sent Defendant VW the pre-lawsuit notice required under *Civil Code* Section 1782(a).  Plaintiff further filed the Declaration of venue required by section 1780(d) concurrently herewith.

**SECOND CAUSE OF ACTION**

**NEGLIGENT MISREPRESENTATION**

49.     Plaintiff re-alleges and hereby incorporates each and every allegation contained in Paragraphs 1 through 48 of this Complaint as though fully set forth herein.

50.     Plaintiff purchased his VW Clean Diesel Vehicle based upon representations and advertisements wherein VW stated that its Clean Diesel Vehicles were "clean", fuel efficient, and compliant with federal and state emission guidelines.

51.     As specified above, VW knew or should have known that the VW Clean Diesel Vehicles were not "clean" and were not compliant with federal and state emission guidelines.

52.     Plaintiff is informed and believes, and thereon alleges that VW followed a systematic pattern of misrepresenting the true nature of the VW Clean Diesel Vehicles, including but not limited to the true nature of their emissions.   These misrepresentations were material to the Plaintiff and to the members of the class. The exact misrepresentations made by VW are known exclusively to VW and the unidentified Class Members.  This Complaint will be amended, if required, to specify each and every misrepresentation made by VW in its various advertisements, sales materials etc.

53.     By misrepresenting the true nature of the VW Clean Diesel Vehicles, VW misrepresented to Plaintiff, Class Members the EPA, and other governmental agencies the actual amount of harmful emissions being placed into the environment by any given VW Clean Diesel Vehicle. Additionally, Plaintiff and Class Members paid more for their vehicles than they otherwise would have paid for similar modeled vehicles that did not purport to be "clean" and fuel efficient.

54.     Plaintiff is informed and believes, and thereon alleges that this type of misrepresentation concerning the environmental impact of the VW Clean Diesel

Vehicles was commonly made by VW and its dealerships and provided to Plaintiff and Class Members.

55. This common misrepresentation was material in that the amount paid by Plaintiff and Class Members for the VW Clean Diesel Vehicles.

56. VW's representations concerning the true nature of the VW Clean Diesel Vehicles were, in fact, false.

57. The common representations made by VW regarding the VW Clean Diesel Vehicles were made with the intention to induce Plaintiff and Class Members to rely upon them to induce them to purchase the VW Clean Diesel Vehicles.

58. Plaintiff's and Class Members' reliance upon the representations was reasonable and justified under the circumstances alleged herein.

59. Plaintiff's and Class Members' reliance upon the representations was reasonable and justified given the fact that VW is a highly-regulated automobile manufacturer and distributor having a legal duty to accurately calculate and report emission levels to the EPA and state regulators. Plaintiff and Class Members had a right to rely upon VW to accurately represent the information concerning the VW Clean Diesel Vehicles.

60. Additionally, Plaintiff's and Class Members' reliance upon the representations was reasonable and justified given Plaintiff and Class Members belief that VW would act in good faith in reporting information to the EPA and similar state regulators.

61. Plaintiff and Class Members had no reason to believe that the representations made to the EPA in VW's applications for certificates of conformity regarding the VW Clean Diesel Vehicles were not true.

62. Plaintiff is informed and believes, and thereon alleges that in reliance on these representations, Plaintiff and Class Members were induced to and did purchase VW Clean Diesel Vehicles based upon the misrepresentations of VW.

**CLASS ACTION COMPLAINT**

63.     As a proximate result of Defendant's wrongful acts and omissions as alleged herein, Plaintiff and Class Members have been damaged in an amount according to proof at time of trial including, but not limited to, damages needed to compensate Plaintiff and Class Members for the loss in fair market value that each of the VW Clean Diesel Vehicles will suffer, as well as increased costs that may result due to decreases in vehicle performance once the VW Clean Diesel Vehicles are "fixed" and brought into environmental compliance.

## THIRD CAUSE OF ACTION
### INTENTIONAL MISREPRESENTATION

64.     Plaintiff re-alleges and hereby incorporates each and every allegation contained in Paragraphs 1 through 63 of this Complaint as though fully set forth herein.

65.     Plaintiff purchased his VW Clean Diesel Vehicles based upon representations and advertisements wherein VW stated that its Clean Diesel Vehicles were "clean", fuel efficient, and compliant with federal and state emission guidelines.

66.     As specified above, VW knew that the VW Clean Diesel Vehicles were not "clean" and were not compliant with federal and state emission guidelines.

67.     Plaintiff is informed and believes, and thereon alleges that Defendant followed a systematic pattern of misrepresenting the true nature of the VW Clean Diesel Vehicles, including but not limited to the true nature of their emissions. The exact misrepresentations made by VW are known exclusively to VW and the unidentified Class Members.  This Complaint will be amended, if required, to specify each and every misrepresentation made by VW in its various advertisements, sales materials etc.

68.     By misrepresenting the true nature of the VW Clean Diesel Vehicles, VW misrepresented to Plaintiff, Class Members the EPA, and other governmental agencies the actual amount of harmful emissions being placed into the environment by

any given VW Clean Diesel Vehicle. Additionally, Plaintiff and Class Members paid more for their vehicles than they otherwise would have paid for similar modeled vehicles that did not purport to be "clean" and fuel efficient.

69. Plaintiff is informed and believes, and thereon alleges that this type of misrepresentation concerning the environmental impact of the VW Clean Diesel Vehicles was commonly made by VW and its dealerships and provided to Plaintiff and Class Members.

70. This common misrepresentation was material in that the amount paid by Plaintiff and Class Members for the VW Clean Diesel Vehicles.

71. VW's representations concerning the true nature of the VW Clean Diesel Vehicles were, in fact, false, and intentionally made to mislead Plaintiff and Class Members.

72. The common representations made by VW regarding the VW Clean Diesel Vehicles were made with the intention to induce Plaintiff and Class Members to rely upon them to induce them to purchase the VW Clean Diesel Vehicles.

73. Plaintiff's and Class Members' reliance upon the representations was reasonable and justified under the circumstances alleged herein.

74. Plaintiff's and Class Members' reliance upon the representations was reasonable and justified given the fact that VW is a highly-regulated automobile manufacturer and distributor having a legal duty to accurately calculate and report emission levels to the EPA and state regulators. Plaintiff and Class Members had a right to rely upon VW to accurately represent the information concerning the VW Clean Diesel Vehicles.

75. Additionally, Plaintiff's and Class Members' reliance upon the representations was reasonable and justified given Plaintiff and Class Members belief that VW would act in good faith in reporting information to the EPA and similar state regulators.

76.     Plaintiff and Class Members had no reason to believe that the representations made to the EPA in VW's applications for certificates of conformity regarding the VW Clean Diesel Vehicles were not true.

77.     Plaintiff is informed and believes, and thereon alleges that in reliance on these representations, Plaintiff and Class Members were induced to and did purchase VW Clean Diesel Vehicles based upon the misrepresentations of VW.

78.     As a proximate result of Defendant's wrongful acts and omissions as alleged herein, Plaintiff and Class Members have been damaged in an amount according to proof at time of trial including, but not limited to, damages needed to compensate Plaintiff and Class Members for the loss in fair market value that each of the VW Clean Diesel Vehicles will suffer, as well as increased costs that may result due to decreases in vehicle performance once the VW Clean Diesel Vehicles are "fixed" and brought into environmental compliance.

79.     Plaintiffs allege that such acts and omissions constitute despicable conduct which subjected and continues to subject Plaintiff and Class Members to loss of tax deductions and unjust hardship in conscious disregard of their rights so as to justify an award of punitive damages against Defendant.

## FOURTH CAUSE OF ACTION
### UNFAIR/DECEPTIVE BUSINESS PARACTICES

80.     Plaintiff re-alleges and hereby incorporates each and every allegation contained in Paragraphs 1 through 79 of this Complaint as though fully set forth herein.

81.     California Business & Professions Code §§ 17200 et seq. ("UCL") prohibits acts of unfair competition, including any "unlawful, unfair or fraudulent business act or practice," including, but not limited to false advertising.

82.     Defendant's scheme was unlawful in that VW violated federal and California state laws as specified herein and also violated the UCL because VW made

false and misleading representations to purchasers and lessees of VW Clean Diesel Vehicles, occurring, in part, in California, which constitutes unlawful, unfair and fraudulent business practices under the UCL. In particular, because Defendant's conduct has been directed to California consumers, and because VW has sold and leased VW Clean Diesel Vehicles to borrowers and purchasers in California, VW's conduct has affected California's interests and its residents. Thus, the UCL can be fairly applied to a class of lessees and purchasers within California who have been harmed as a result.  Moreover, California has a substantial interest in preventing fraudulent practices within the state which may have an effect both in California and throughout the rest of the country.  Plaintiff asserts that the separate subclass of California lessees and purchasers should be certified for plaintiff's UCL claim.  As referenced above, this class would be defined in the same manner as the main class, but would be limited to Class Members who purchased or leased VW Clean Diesel Vehicles between 2009 and 2015 in California.

83.    Specifically, Plaintiff and Class Members have been injured by the false and misleading statements of VW as hereinbefore alleged.  Plaintiff and Class Members have suffered, to varying degrees, years' worth of auto payments for environmentally non-compliant vehicles.

84.    Plaintiffs have suffered losses of money as a result of Defendant's unlawful, deceptive and unfair business practices and will incur future losses **as a result of having to have their vehicles "fixed" to become compliant with** environmental regulations. This fix, may very well result in performance related problems with the VW Clean Diesel Vehicles. As a result of Defendant's violations of the UCL, Plaintiffs and Class Members are entitled to bring this claim for restitution, reasonable attorneys' fees pursuant to California's private attorney general statute, and costs and other injunctive or declaratory relief as may be available.

**CLASS ACTION COMPLAINT**

## FIFTH CAUSE OF ACTION

### Untrue and Misleading Advertising in Violation of

### *Bus. & Prof. Code* § 17500, *et seq*.

88.     Each of the above allegations is incorporated herein.

89.     California *Business & Professions Code* § 17500 prohibits various deceptive practices in connection with the dissemination in any manner of representations for the purpose of inducing, or which are likely to induce, directly or indirectly, customers to purchase products, including the products at issue herein.

90.     The Defendant's acts, practices, misrepresentations and omissions alleged herein were intended to, and did, induce the consuming public to purchase the VW Clean Diesel Vehicles in violation of *Business & Professions Code* § 17500.

91.     As a direct result of the foregoing, plaintiffs and the other members of the classes to which this cause of action applies and the general public are entitled to injunctive and equitable relief, restitution, and an order requiring disgorgement of Defendant's ill-gotten gains, as described above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all Class Members, prays for judgment and injunctive and equitable relief against the Defendant as follows:

(a)     Certification of the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiff as the representative of the Class (and potentially a California sub-class), and designating his counsel as counsel for the Class;

(b)     A judicial declaration that Defendant committed the violations alleged herein;

(c)     For general and special damages in an amount to be proven at time of trial;

(d)   For punitive or exemplary damages (CLRA and Fraud causes of action only); and

(e)   An Order requiring Defendant to pay damages for the Class Members' reasonable expenses in bringing their vehicles into compliance with federal and state regulations on emissions and pollution.

## INJUNCTIVE RELIEF

For a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction, all enjoining Defendant from advertising, marketing, selling, or leasing any VW Clean Diesel Vehicles to the general public  and for consequential damages necessary as part of implementing the injunctive relief.

## FOR ALL CAUSES OF ACTION

1.   Interest at the legal rate on the sum of damages awarded;

2.   Attorney's fees according to proof at time of trial;

3.   Costs of suit, including expert witness fees and costs, herein incurred; and

4.   For such other and further relief as this Court may deem proper and just.

## JURY TRIAL DEMAND

Plaintiff and all those similarly situated hereby demand a trial by jury for all issues so triable.   Further, if an arbitration agreement is alleged to exist by the Defendant, that any factual questions relating to arbitrability be decided by a jury.

Date: September 21, 2015              MORRIS POLICH & PURDY LLP

By:_____/s/ David J. Vendler_____
                            David J. Vendler
                            Kevin M. Pollack
                    Attorney for Plaintiff CHRISTOPHER J.
                    D'ANGELO and all those similarly situated