MORRIS POLICH & PURDY LLP
David J. Vendler, Esq. (SBN 146528)
Email: DVendler@mpplaw.com
Kevin M. Pollack, Esq. (SBN 272786)
Email: KPollack@mpplaw.com
1055 West Seventh Street, Suite 2400
Los Angeles, CA 90017
Tel.:   (213) 417-5100
Fax:   (213) 488-1178

Attorneys for Plaintiff CHRISTOPHER J. D'ANGELO
and all others similarly situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER J. D'ANGELO, an individual on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey Corporation and VOLKSWAGEN AG, a German corporation, <br><br> Defendants. | Case No.: 2:15-cv-07390-DOC (SPx) <br><br> **PLAINTIFF CHRISTOPHER J. D'ANGELO'S NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** <br><br> **Date:   November 23, 2015** <br> **Time:   8:30 a.m.** <br> **Ctrm.:   9D** <br> **Judge:   Hon. David O. Carter** |

## TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on November 23, 2015 at 8:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 9D before the Honorable David O. Carter, of the above-entitled Court located at 411 W. Fourth Street, Santa Ana, California 92701, Plaintiff Christopher J. D'Angelo ("Plaintiff") will, and hereby does, move pursuant to Rule 23 of the *Federal Rule of Civil Procedure* ("Rule 23")

and California *Civil Code* Section 1781(b) to certify the following classes of plaintiffs:

- **<u>CLASS 1</u>: All owners or lessees of VW Clean Diesel Vehicles[1] who purchased or leased a new or used such vehicle in the Unites States or its territories and protectorates from an authorized VW dealership between 2008 and the present ("the Class Period") that contained software designed to hide the vehicle's true emission levels,[2]**

- **<u>CLASS 2</u>: All owners of VW Clean Diesel Vehicles as of September 18, 2015 who did not purchase their VW Clean Diesel Vehicle from an authorized VW dealership.**

---

[1] VW's Clean Diesel vehicles include the following models and shall be referred to herein as "VW Clean Diesel Vehicles":

| Year | EPA Test Group | Make and Model |
|---|---|---|
| 2009 | 9VWXV02.035N | VW Jetta, VW Jetta Sportwagen |
| 2009 | 9VWXV02.0U5N | VW Jetta, VW Jetta Sportwagen |
| 2010 | AVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2011 | BVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2012 | CVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2012 | CVWXV02.0U4S | VW Passat |
| 2013 | DVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2013 | DVWXV02.0U4S | VW Passat |
| 2014 | EVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2014 | EVWXV02.0U4S | VW Passat |
| 2015 | FVGAV02.0VAL | VW Beetle, VW Beetle Convertible, VW Golf, VW Golf Sportwagen, VW Jetta, VW Passat, Audi A3 |

[2] Excluded from the Classes are the judges to whom this case is or will be assigned and any member of those judges' immediate families.

In addition, Plaintiff is seeking to certify two subclasses comprised of**:**

- **SUBCLASS 1: All Class 1 Members who purchased or leased their VW Clean Diesel Vehicle in California during the Class Period.**

- **SUBCLASS 2: All Class 2 Members whose VW Clean Diesel Vehicles were registered in California as of September 18, 2015.**

This motion is being brought at this time pursuant to Rule 23(c)(1)(A) and Local Rule 23-3. Rule 23(c)(1)(A) requires that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Consistent with this Rule, Local Rule 23-3 requires that within 90 days of service of the complaint, "the proponent of the class *shall* file a motion for certification that the action is maintainable as a class action, unless otherwise ordered by the Court." (Emphasis added).[3] Given Defendants' public admissions of wrongdoing, there is no good reason to delay the bringing of such a motion in this case.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities in Support of Plaintiff's Motion for Class

---

[3] Plaintiff D'Angelo has filed a motion before the Multi-District Panel seeking to consolidate all of the more than 100 class action cases filed in federal courts across the nation in this Court. Currently, that motion is schedule to be heard on December 3, 2015. See MDL No. 2672 (Document No. 26). Plaintiff served his complaint on Volkswagen Group of America, Inc. on September 22. Thus, the 90 day limit under Local Rule 23-3 will have already expired by the time of the JPML hearing. Plaintiff further believes that in this case an early certification ruling will benefit the class by: (1) establishing an attorney client relationship that will prevent VW from communicating directly with the Class Members (including about its recently announced plan for a recall) in an unsupervised manner; (2) assist in the settlement process; and (3) will avoid any potential that VW could attempt what was done in the *Campbell-Ewald Company v. Gomez* case now pending before the Supreme Court -- involving whether a defendant to an uncertified class action case can derail the class action by picking off the class representative's claim by making an offer of complete settlement. See 135 S.Ct. 2311. While Plaintiff does not believe that VW can moot his claims because of his request for punitive damages, an early certification order will eliminate this potential entirely.

1   Certification, the Declarations of David J. Vendler and Christopher J. D'Angelo, the
2   pleadings on file in this action, and upon such other matters, evidence, and arguments
3   as may be presented to the Court before or at the hearing on the Motion.
4        This motion is made following the conference of counsel pursuant to L.R. 7-3
5   which took place on (date).
6
7   Date: October 19, 2015                     MORRIS POLICH & PURDY LLP
8
9                                              By:_____/s/ David J. Vendler_____
10                                                  David J. Vendler
                                                    Kevin M. Pollack
11
12                                             Attorney for Plaintiff CHRISTOPHER J.
                                               D'ANGELO and all those similarly situated
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   STATEMENT OF MATERIAL FACTS ............................................ 2

    A.    VW'S OBLIGATIONS TO REPORT THE INSTALLATION OF AECDS .......................................................................................... 2

    B.    VW'S WRONGFUL CONDUCT ............................................. 4

    C.    The Proposed Class Members' Claims Do Not Materially Differ ............ 7

III.  ARGUMENT ....................................................................................... 9

    A.    This Case is Ideally Suited For Class Treatment. ................................... 11

    B.    The Proposed Class is Sufficiently Ascertainable. ................................ 12

    C.    The Rule 23 (a) Factors are Easily Satisfied. ........................................ 12

        1.    The Class Is Sufficiently Numerous .............................................. 12

        2.    Questions of Law and Fact Common to the Class Exist. .............. 13

        3.    Plaintiff's Claims Are Typical of Class Members' Claims. .......... 15

        4.    Plaintiff Will Fairly And Adequately Represent The Class. ......... 16

    D.    The Proposed Class Satisfies Rule 23(b)(3)'s Predominance Requirement. ......................................................................................... 17

        1.    Plaintiff's CLRA Claim. ................................................................ 18

        2.    Plaintiff's Fraud and Negligent Misrepresentation Claims. ......... 19

        3.    Plaintiff's Unfair Business Practices Claim. ................................. 20

        4.    The False Advertising Claim. ........................................................ 21

        5.    The Warranty Claims. .................................................................... 21

        6.    Damages and/or Restitution can be Computed Uniformly. ........... 22

    E.    The Class Action Method is Superior. ................................................... 22

IV.   MORRIS POLICH & PURDY LLP SHOULD BE APPOINTED CLASS COUNSEL ........................................................................................... 25

V.    CONCLUSION ................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Am. Honda Motor Co., Inc. v. Super. Ct.*,
  199 Cal. App. 4th 1367 (Cal. App. 2d Dist. 2011) ................................... 21

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................ 9

*Ansari v. New York Univ.*
  (SD NY 1998) 179 FRD 112 ................................................................. 13

*Armstrong v. Davis*,
  275 F.3d 849, 872 n.28 (9th Cir. 2001) ................................................ 11

*Blackie v. Barrack*,
  524 F.2d 891 (C.A.9 1975) ............................................................. 8, 23

*Bridge v. Phoenix Bond & Indem. Co.*,
  553 U.S. 639 (2008) .............................................................................. 25

*Caro v. Procter & Gamble Co.*,
  18 Cal. App. 4th 644 (1993) ................................................................. 10

*Chamberlan v. Ford*,
  223 F.R.D. 524 (N.D. Cal. 2004) .................................................... 11, 19

*Costelo v. Chertoff*,
  258 F.R.D. 600 (C.D. Cal. 2009) .......................................................... 15

*Galvan v. KDI Distribution* [sic] *Inc.*,
  No. SACV 08-0999-JVS (ANx), 2011 WL 5116585, at *3 (C.D. Cal. Oct.
  25, 2011)............................................................................... 11, 12, 18

*General Tel. Co. v. Falcon*,
  457 U.S. 147 (1982) .............................................................................. 17

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)........................................................passim

*Hartless v. Clorox Co.*,
  273 F.R.D. 630 (S.D. Cal. 2011).......................................................... 24

*Hogya v. Superior Court*,
  75 Cal. App. 3d 122 (1977)............................................................. 10, 19

*In re MyFord Touch Consumer Litig.*,
  46 F. Supp. 3d 936 (N.D. Cal. 2014) .................................................... 22

*In re Steroid Hormone Product Cases*,
  181 Cal. App. 4th 145, 157 (2010)........................................................ 19

**MOTION FOR CLASS CERTIFICATION**

*In re THQ, Inc. Secs. Litig.*,
   No. CV00-1783AHM (EX), 2002 WL 1832145, at *11 (C.D. Cal. Mar.
   22, 2002) ............................................................................................... 13

*In re Tobacco II Cases*,
   JCCP 4042, 2001 WL 34136870, at *3 (Cal. Super. Ct. Apr. 11, 2001) .................. 21

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001) .................................................................... 25

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
   571 F.3d 953 (9th Cir. 2009) ................................................................... 18

*Johnson v. General Mills, Inc.*,
   276 F.R.D. 519, 521 (C.D.Cal. 2011) ...................................................... 11

*Joint Equity Comm. of Investors of Real Estate Partners, Inc. v. Coldwell
   Banker Real Estate Corp.*,
   281 F.R.D. 422 (C.D. Cal. 2012) ............................................................ 20

*Keegan v. Am. Honda Motor Co., Inc.*,
   284 F.R.D. 504 (C.D. Cal. 2012) .............................................. 16, 19, 20, 23

*Keilholtz v. Lennox Hearth Prods. Inc.*,
   268 F.R.D. 330 (N.D. Cal. 2010) ............................................................ 12

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004) ............................................................... 25

*Kohen v. Pacific Investment Mgmt. Co. LLC*,
   571 F3d 672 (7th Cir. 2009) ................................................................... 17

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) .................................................................. 13

*McKenzie v. Fed. Exp. Corp.*,
   275 F.R.D. 290 (C.D. Cal. 2011) ............................................................ 24

*Menagerie Prods. v. Citysearch*,
   No. CV 08-4263 CAS (FMO), 2009 WL 3770668, at *4 (C.D. Cal. Nov.
   9, 2009) ........................................................................................... 13, 20

*Moeller v. Taco Bell Corp.*,
   220 F.R.D. 604 (N.D. Cal. 2004) ............................................................ 12

*O'Connor v. Boeing N. Am., Inc.*,
   184 F.R.D. 311 (C.D. Cal. 1998) ............................................................ 12

*Parkinson v. Hyundai Motor Am.*,
   258 F.R.D. 580 (C.D. Cal. 2008) .......................................... 12, 15, 19, 21

*Pickett v. Iowa Beef Processors*,
   209 F3d 1276 (11th Cir. 2000) ............................................................... 16

*Rodman v. Safeway, Inc.*,
   2014 WL 988992 *11 (N.D.Cal. 2014) ................................................. 8, 20

**MOTION FOR CLASS CERTIFICATION**

*Satchell v. FedEx Corp.*,
   Case No. 03-02659 SI, 2005 WL 2397522, at *8 (N.D. Cal. Sept. 28,
   2005) ........................................................................................................................ 16

*Simpson v. Fireman's Fund Ins. Co.*,
   231 F.R.D. 391 (N.D. Cal. 2005) ...................................................................... 15

*Staton v. Boeing*,
   327 F.3d 938 (9th Cir. 2003) ............................................................................. 15

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) ........................................................................... 19

*Tait v. BSH Home Appliances Corp.*,
   289 F.R.D. 466 (C.D. Cal. 2012) ...................................................................... 23

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ............................................................................. 23

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ....................................................................................... 13

*Withers v. eHarmony, Inc.*,
   CV 09-2266-GHK (RCx), Order Denying Mot. to Cert. Class, Docket No.
   13 (June 2, 2010) ............................................................................................... 18

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ...................................................... 15, 16, 18, 23

*Xavier v. Phillip Morris USA, Inc.*,
   787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) ................................................. 12

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
   594 F.3d 1087 (9th Cir. 2009) ............................................................. 8, 17, 20, 22

**Statutes**

42 U.S.C. § 7522 ............................................................................................... 3, 6

California *Business & Professions Code* § 17200 ............................................... 1

California *Civil Code* § 1750 ............................................................................... 1

California *Civil Code* § 1781 ........................................................................ 2, 10

**Other Authorities**

Clean Air Act § 203 .......................................................................................... 3, 6

**Rules**

Federal Rules of Civil Procedure, Rule 23 ............................................... passim

**Regulations**

40 C.F.R. § 86.1803-01 .................................................................2, 3

40 C.F.R. § 86-1809-01 ..................................................................3

40 C.F.R. § 86.1811-04 ...................................................................2

40 C.F.R. § 86.1843-01 ...................................................................2

40 C.F.R. § 86.1844-01 .................................................................2, 3

40 C.F.R. § 86.1848-10 ...................................................................3

40 C.F.R. § 86-1854-12 ...................................................................3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This action arises from defendant Volkswagen Group of America, Inc.'s and Volkswagen AG's (collectively "VW") admitted cheating of American automotive consumers (including Plaintiff) -- and government regulators -- by touting the supposedly "clean" nature of its diesel cars in its national "Clean Diesel" advertising campaign, while knowing that the vehicles' engine management system included software to hide their actual emission rates during governmental testing.  Shockingly, VW has admitted that it intentionally designed and installed these electronic cheating devices ("defeat devices") to detect when the vehicles were being tested, and that it knew that during normal operation, its supposedly "Clean Diesel" cars polluted the environment at rates substantially above federal and California-compliant levels.  In fact, the EPA and California Air Resource Board have determined that these "Clean Diesel" automobiles produce nitrogen oxide at levels 10 to 40 times above EPA-compliant levels when being driven in normal use.

Plaintiff filed his class action Complaint seeking damages from VW and/or equitable relief (including injunctive relief, rescission and restitution) on behalf of himself and the classes of persons (nationwide and in California) that have been similarly affected by VW's misrepresentations about these *non*-Clean Diesel Vehicles.

Plaintiff's First Amended Complaint asserts the following claims against VW:

1.   Violations of the Consumer Legal Remedies Act ("CLRA"), codified at Cal. Civ. Code §§ 1750, et seq.;

2.   Negligent misrepresentation;

3.   Intentional Misrepresentation (Fraud);

4.   Violations of the Unfair/Deceptive Business Practices Act (Cal. Bus. & Prof. Code §§ 17200, et seq.);

5.   Violations of the False Advertising Laws (Cal. Bus. & Prof. Code §§ 17500, et seq.);

**MOTION FOR CLASS CERTIFICATION**

6.   Violation of Song-Beverly Consumer Warranty Act and the California Commercial Code; and

7.   Violation of the Magnuson–Moss Warranty Act.

## II.   STATEMENT OF MATERIAL FACTS

### A.   VW'S OBLIGATIONS TO REPORT THE INSTALLATION OF AECDS

Light-duty vehicles (such as the VW Clean Diesel Vehicles) must satisfy emission standards for certain air pollutants, including NOx.  40 C.F.R. § 86.1811-04. The EPA administers a certification program to ensure that every vehicle introduced into United States commerce satisfies applicable emission standards. Under this program, the EPA issues certificates of conformity (COCs), and thereby approves the introduction of vehicles into United States commerce.  Without such a certificate, VW could not have sold its Clean Diesel Vehicles in the United States.

In order to obtain a COC, a light-duty vehicle manufacturer such as VW must submit a COC application to the EPA for each test group of vehicles that it intends to enter into United States commerce.  40 C.F.R. § 86.1843-01.  The COC application must include, among other things, a list of all auxiliary emission control devices (AECDs) installed on the vehicles.  40 C.F.R. § 86.1844-01(d)(11).

An AECD is "any element of design which senses temperature, vehicle speed, engine RPM, transmission gear, manifold vacuum, or any other parameter for the purpose of activating, modulating, delaying, or deactivating the operation of any part of the emission control system."  40 C.F.R. § 86.1803-01.  The COC application must also include "a justification for each AECD, the parameters they sense and control, a detailed justification of each AECD that results in a reduction in effectiveness of the emission control system, and [a] rationale for why it is not a defeat device."  40 C.F.R. § 86.1844-01(d)(11).

A defeat device is an AECD "that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered

in normal vehicle operation and use, unless: (1) Such conditions are substantially included in the Federal emission test procedure; (2) The need for the AECD is justified in terms of protecting the vehicle against damage or accident; (3) The AECD does not go beyond the requirements of engine starting; or (4) The AECD applies only for emergency vehicles . . . ." 40 C.F.R. § 86.1803-01.

Motor vehicles equipped with defeat devices, such as those at issue here, cannot be certified. EPA, Advisory Circular Number 24: Prohibition on use of Emission Control Defeat Device (Dec. 11, 1972); see also 40 C.F.R. §§ 86-1809-01, 86-1809-10, 86-1809-12.  "Vehicles are covered by a certificate of conformity only if they are in all material respects as described in the manufacturer's application for certification . . ."  40 C.F.R. § 86.1848-10(c)(6). For this reason, COC's issued by EPA, including those issued to VW, state expressly, "[t]his certificate covers only those new motor vehicles or vehicle engines which conform, in all material respects, to the design specifications" described in the application for that COC.  See also 40 C.F.R. §§ 86.1844-01 (listing required content for COC applications) and 86.1848-01(b).

The Clean Air Act ("CAA") also makes it a violation "for any person to manufacture or sell, or offer to sell, or install, any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use."  CAA § 203(a)(3)(B), 42 U.S.C. § 7522(a)(3)(B); 40 C.F.R. § 86.1854-12(a)(3)(ii).

Additionally, manufacturers are prohibited from selling, offering for sale, introducing into commerce, delivering for introduction into commerce, or importing, any new motor vehicle unless that vehicle is covered by an EPA-issued COC.  CAA § 203(a)(1), 42 U.S.C. § 7522(a)(1); 40 C.F.R. § 86.1854-12(a)(1).

**MOTION FOR CLASS CERTIFICATION**

## B.   VW'S WRONGFUL CONDUCT

According to the EPA and California's Air Resource Board ("CARB"), the VW Clean Diesel Vehicles have AECDs that were not described in VW's application(s) for the COC covering the subject vehicles.  See EPA and CARB reports attached to the Declaration of David J. Vendler ("Vendler Dec.") as Exhibits "A" and "B."[4] According to the EPA and CARB, VW manufactured and installed software in the electronic control module (ECM) of the VW Clean Diesel Vehicles which both the EPA and CABR call the "switch."

The "switch" senses whether VW Clean Diesel Vehicles are being tested based on various inputs including (but not limited to) the position of the steering wheel, vehicle speed, the duration of the engine's operation, and barometric pressure.  These inputs track the parameters of the federal test procedure used for emission testing for EPA certification purposes.  During EPA emission testing, the VW Clean Diesel Vehicles' ECM ran software which re-tuned the engine to produce compliant emission results under an ECM calibration that VW referred to as the "dyno calibration" (referring to the equipment used in emissions testing, called a dynamometer). However, during normal vehicle operation, the "switch" was activated and the vehicle ECM software ran a separate "road calibration" which re-tuned the engine to substantially reduce the effectiveness of the emission control system (specifically the selective catalytic reduction or the lean NOx trap), but improved the vehicle's performance.  As a result, under normal road conditions, emissions of NOx increased by a factor of 10 to 40 times above the EPA-compliant levels, depending on the type of drive cycle (e.g., city, highway).  See Exhibits "A" and "B."

The EPA and CARB were alerted to the emissions problems with these vehicles in May 2014 when the West Virginia University's (WVU) Center for Alternative Fuels, Engines & Emissions published results of a study commissioned by the International

---

[4] Plaintiff has requested the Court to take judicial notice of these governmental reports.

Council on Clean Transportation that found significantly higher in-use emissions from two light duty diesel vehicles (a 2012 Jetta and a 2013 Passat).  See Vendler Dec., Exhibit "C."

Over the course of the year following the publication of the WVU study, VW continued to assert to CARB and the EPA that the increased emissions from these vehicles could be attributed to various technical issues and unexpected in-use conditions.  See Exhibits "A" and "B."  In fact, VW issued a voluntary recall in December 2014 to address the issue.  *Id.* at pp. 4 and 2, respectively.  After the recall, CARB, in coordination with the EPA, conducted follow up testing of these vehicles both in the laboratory and during normal road operation to confirm the efficacy of the recall.  When the testing showed only a limited benefit to the recall, CARB broadened the testing to pinpoint the exact technical nature of the vehicles' poor performance, and to investigate why the vehicles' onboard diagnostic system was not detecting the increased emissions. None of the potential technical issues suggested by VW explained the higher test results consistently confirmed during CARB's testing.

It was only when it became clear that VW was going to lose its U.S. market -- because CARB and the EPA were not going to approve certificates of conformity for VW's 2016 model year Clean Diesel Vehicles -- that VW finally admitted the existence of the defeat device which had not been disclosed in its prior COC applications.  As Volkswagen Group of America, Inc.'s CEO Michael Horn stated at a press conference about the installation of the defeat devices, "our company was dishonest."  See Vendler Dec., Exhibit "D."  Mr. Michael Horn reiterated VW's wrongdoing in his testimony on October 8, 2015 before the House Energy and Commerce subcommittee at its hearing on false emissions readings from diesel-powered vehicles manufactured by VW.  See Vendler Dec., Exhibits "J" and "K" in which Mr. Horn stated, *inter alia*:

> We have broken the trust of our customers, dealerships, and employees, as well as the public and regulators… VW installed the defeat devices for the purpose of defeating EPA regulations... I again apologize on behalf of

**MOTION FOR CLASS CERTIFICATION**

everyone at Volkswagen. We will fully cooperate with all responsible authorities. We will find remedies for our customers, and we will work to ensure that this will never happen again.[5]

Similar admissions of VW's fraudulent conduct were also made by Prof. Dr. Martin Winterkorn, the former CEO of VW's parent, Volkswagen AG, just before his resignation. See Vendler Dec., Exhibits "I" and "J."

Because the VW Clean Diesel Vehicles do not conform in material ways to the vehicle specifications described in the COC application(s), VW violated section 203(a)(1) of the CAA, 42 U.S.C. § 7522(a)(1) each time it sold, offered for sale, introduced into commerce, delivered for introduction into commerce, or imported the hundreds of thousands of VW Clean Diesel Vehicles that it sold or leased to class members. Additionally, VW violated section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), each time it manufactured and installed into these vehicles an ECM equipped with the "switch."

Yet, despite its knowledge that it was systematically violating U.S. law, VW not only sold and leased these vehicles to U.S. consumers, but "doubled down" on its wrong by focusing its entire marketing campaign on their supposedly "clean" nature and publicizing itself as an environmentally conscientious company. It can honestly be said that the moniker "Clean Diesel" was the centerpiece/pillar of all of VW's advertising. In its nationally advertised television campaigns, VW deliberately targeted people like plaintiff who are environmentally conscious with comparisons of its "clean" high performance cars to sluggish and dirty diesels put out by its competition. This national campaign even resulted in VW being able to successfully charge a price premium over its comparable gas-powered vehicles. D'Angelo Dec., ¶ 3. And see Vendler Dec., Exhibits "E" - "H."

VW's marketing effort was so successful that VW became the largest seller of

---

[5] Mr. Horn's full October 8, 2015 testimony before Congress is attached to the Vendler Dec. as Exhibit "L."

**MOTION FOR CLASS CERTIFICATION**

1    diesel passenger vehicles in the United States.  But the truth is that VW's claims were

2    all a lie.  See Vendler Dec., Exhibits "D," "I" and "J."  These (more expensive) cars

3    actually produced emissions at levels far beyond those allowed by federal and state

4    regulations.  See Vendler Dec., Exhibits "A" and "B."  Worse, when questions began

5    to arise, VW knowingly attempted to conceal the truth about what it had done. *Id.*

6         **C.    The Proposed Class Members' Claims Do Not Materially Differ**

7         Plaintiff and his fellow Class Members all purchased or leased VW Clean Diesel

8    Vehicles based on VW's specific representations (made nationwide as part of VW's

9    national advertising campaign) that the VW Clean Diesel Vehicles were both (1) fuel

10   efficient and (2) environmentally "clean."  D'Angelo Dec., ¶¶ 3-4.  Many examples of

11   VW's national marketing campaign materials prominently uniformly advertising the

12   "cleanliness" of its diesel vehicles are also attached to the Vendler Dec. as Exhibits

13   "E" -"H."[6]  Based on the information published by the E.P.A and other state regulatory

14   agencies, and VW's recent admissions about its wrongdoing, Plaintiff learned that the

15   VW's representations about his and other Class Member cars were demonstrably false.

16   He has also learned that the representation that VW's Clean Diesel Vehicles were

17   represented to meet governmental pollution standards and that they don't.

18         VW's intentional and reckless decision to: (1) design and an install the defeat

19   devices in the VW Clean Diesel Vehicles, (2) misrepresent the true nature of the VW

20   Clean Diesel Vehicles in its nationwide advertising campaign, (3) hide the vehicles'

21   impact on the environment, and (4) charge consumers premiums for supposedly

22   environmentally "clean" cars, has negatively affected Plaintiff and all Class Members

23   uniformly.  Not only are the VW Clean Diesel Vehicles that Plaintiff and the Class

24   Members own or lease polluting the environment beyond allowable state and federal

25   limits, but the value of all of these vehicles has instantly plummeted.  Further, it

26

27   [6] VW's authorized dealerships are agents of VW and rely for their sales on VW's
     national advertising campaigns, including the "Clean Diesel" advertisements relied on
28   by Plaintiff and other class members.

appears certain that any "fix" implemented by VW will substantially lessen the vehicles' performance characteristics since the whole purpose of the defeat device was to retain performance while fooling emissions testing.   Like all class members, Plaintiff paid a premium for his vehicle based on the misrepresentations that it was not only fuel efficient, but that it was not "sluggish" like other diesels and was "clean" for purposes of the environment.   Plaintiff would not have paid this additional premium (or bought the car at all) if he had known the truth about the vehicle's actual characteristics.   D'Angelo Dec., ¶ 4.

The Ninth Circuit has held that fraud claims predicated on common documents are ideally suited for class treatment and should be certified.   See *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2009) (reversing denial of class certification where plaintiffs based their lawsuit on nondisclosures in standardized written forms).   District courts within the Ninth Circuits have also so held.   See *Rodman v. Safeway, Inc.*, 2014 WL 988992 *11 (N.D.Cal. 2014) (class action plaintiffs can avoid the need to show each class member's individual reliance by resorting to California law's presumption of common reliance where "the entire class saw the misrepresentations or was exposed to a pervasive long-term advertising campaign").

As in *Yokoyama*, the fraudulent omissions in VW's applications to the EPA and CARB, as well as its blatant misrepresentations to consumers (made via its national TV campaign and print media advertisements), affected all of the Class Members equally.[7] Plaintiff thus seeks to certify the following classes of plaintiffs:

---

[7] Even if some class members managed not to see VW's "Clean Diesel" advertisements, this would not matter since the pervasiveness of the advertising campaign lifted the overall market for these cars, which deflated just like a stock immediately after VW's admission of wrongdoing. See *Blackie v. Barrack*, 524 F.2d 891, 907 (C.A.9 1975) ("we eliminate the requirement that plaintiffs prove reliance directly in this context because the requirement imposes an unreasonable and irrelevant evidentiary burden.   A purchaser on the stock exchanges may be either unaware of a specific false representation, or may not directly rely on it; he may

•      CLASS 1: All owners or lessees of VW Clean Diesel Vehicles  who purchased or leased a new or used such vehicle in the Unites States or its territories and protectorates from an authorized VW dealership between 2008 and the present ("the Class Period") that contained software designed to hide the vehicle's true emission levels,

•      CLASS 2: All owners of VW Clean Diesel Vehicles as of September 18, 2015 who did not purchase their VW Clean Diesel Vehicle from an authorized VW dealership.

In addition, Plaintiff is seeking to certify two subclasses comprised of:

•      SUBCLASS 1: All Class 1 Members who purchased or leased their VW Clean Diesel Vehicle in California during the Class Period.

•      SUBCLASS 2: All Class 2 Members whose VW Clean Diesel Vehicles were registered in California as of September 18, 2015.

## III.   **ARGUMENT**

A plaintiff seeking to represent a class must demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims and defenses of the representative parties are typical of the claims or defenses of the class; and 4) the respective parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

Additionally, the moving party must satisfy at least one of the requirements of

purchase because of a favorable price trend, price earnings ratio, or some other factor. Nevertheless, he relies generally on the supposition that the market price is validly set and that no unsuspected manipulation has artificially inflated the price, and thus indirectly on the truth of the representations underlying the stock price whether he is aware of it or not, the price he pays reflects material misrepresentations.  Requiring direct proof from each purchaser that he relied on a particular representation when purchasing would defeat recovery by those whose reliance was indirect, despite the fact that the causational chain is broken only if the purchaser would have purchased the stock even had he known of the misrepresentation.  We decline to leave such open market purchasers unprotected.")

Rule 23(b). Here, Plaintiff seeks to certify the proposed classes and subclasses under Rule 23(b)(3) because: (i) common questions of law or fact predominate over individual questions; and (ii) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).[8]

Although the Court must examine the issues closely to determine whether a proposed class is appropriate for certification, Rule 23 grants the district court "broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court." *Galvan v. KDI Distribution* [sic] Inc., No. SACV 08-0999-JVS (ANx), 2011 WL 5116585, at *3

---

[8] The standard for certification for Plaintiff's CLRA claim is different. It is set forth in *Civil Code* Section 1781(b). While the decision to certify a class under Rule 23 rests within the sound discretion of the trial court, there is no such discretion provided for under Civil Code Section 1781(b). If the consumer demonstrates the four elements required under Section 1781(b), class certification **must** be granted. See *Hogya v. Superior Court*, 75 Cal. App. 3d 122 (1977) and *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 657 (1993). *Civil Code* Sections 1781(a) and (b) provide:

> (a) Any consumer entitled to bring an action under Section 1780 may, if the unlawful method, act, or practice has caused damage to other consumers similarly situated, bring an action on behalf of himself and such other consumers to recover damages or obtain other relief as provided for in Section 1780.
> (b) The court **shall** permit the suit to be maintained on behalf of all members of the represented class if all of the following conditions exist.
> (1) It is impracticable to bring all members of the class before the court.
> (2) The questions of law or fact common to the claims are substantially similar and predominate over the questions affecting the individual members.
> (3) The claims or defenses of the representative plaintiffs are typical of the claims or defenses of the class.
> (4) The representative plaintiffs will fairly and adequately protect the interests of the class. (Emphasis added).

As stated in *Hogya*, "[W]e hold Civil Code section 1781, subdivision (b), establishes exclusive criteria for class certification in suits brought pursuant to the Consumers Legal Remedies Act. If the statutory criteria are satisfied, a trial court is under a duty to certify a class **and is vested with no discretion to deny certification based upon other considerations**." (Emphasis added). *Id*. at 75 Cal. App. 3d 140.

(C.D. Cal. Oct. 25, 2011) (quoting *Armstrong v. Davis*, 275 F.3d 849, 872 n.28 (9th Cir. 2001)). The Court "need only form a 'reasonable judgment' on each certification requirement," taking the complaint's allegations as true and declining to make merits determinations. Id. (internal citations omitted).

### A. <u>This Case is Ideally Suited For Class Treatment.</u>

Class treatment is appropriate where, as here, a large group has been adversely affected by a common scheme perpetrated by an auto manufacturer. See *Chamberlan v. Ford*, 223 F.R.D. 524 (N.D. Cal. 2004) and *Johnson v. General Mills, Inc.*, 276 F.R.D. 519, 521 (C.D.Cal. 2011) (motion for decertification denied since all class members' claims shared a common contention that "Defendants made a material misrepresentation regarding the digestive health benefits of YoPlus.")

In *Chamberlan* Ford was accused of concealing a design defect in violation of the CLRA. The class was made up of over 150,000 consumers who had purchased vehicles containing the vehicle component in question and all of the members of the proposed class had claims arising from the same alleged fraudulent concealment by Ford. Because the court found that the proposed class satisfied the requirements of both F.R.C.P. § 23(a) and 23(b), the Court certified the class. *Id.*

As in *Chamberlan*, VW made material misrepresentations to the public at large about the true nature of the VW Clean Diesel Vehicles in both nationally advertised TV commercials and written advertisements. It also lied to regulators in order to be able to sell its vehicles in the U.S. The undisclosed installation of the defeat device in each of the proposed class members' VW Clean Diesel Vehicles is the central focus of all of the Class Member claims. Indeed, on October 9, 2015, VW admitted in testimony before Congress that to fix its "class-wide" wrong, i.e. the defeat device, it is going to recall all of its Clean Diesel Vehicles beginning in January/February. See Vendler Dec., Exhibit "K." In short, the proposed class will be able to establish liability through proof common to the entire proposed class.

**B.      The Proposed Class is Sufficiently Ascertainable.**

Despite the fact that Rule 23 does not specifically require that a proposed class be ascertainable, courts have implicitly required such a showing.  *Galvan v. KDI Distribution [sic] Inc.*, No. SACV 08-0999-JVS (ANx), 2011 WL 5116585 (C.D. Cal. Oct. 25, 2011) (citing *Xavier v. Phillip Morris USA, Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011)).  Ascertainability is satisfied as long as it is administratively feasible for the court to ascertain whether an individual is a member of the class.  *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).

The Class definitions that have been proposed by Plaintiff employ objective criteria that make class membership demonstrably verifiable.  The purchase or lease of a VW Clean Diesel Vehicle (specified by model and year) is straightforward, and Class members can be readily identified via VW's sales and lease documents.  Indeed, VW is admitting as much by its announcement of a recall program to "fix" its cars.  Further, Class members who did not purchase or lease from VW directly can self-identify through their own DMV registration materials or insurance documents.

Classes like the one proposed here have been approved in this district.  See *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 593-94 (C.D. Cal. 2008) (finding ascertainability when, as is the case here, the class definition identified the make, model and model year for the class vehicle); *Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 336 (N.D. Cal. 2010) (finding ascertainability when unnamed plaintiffs would be able to identify the allegedly defective goods themselves).  Based on the above, Class Members are objectively ascertainable.

**C.      The Rule 23 (a) Factors Are Easily Satisfied.**

**1.      The Class Is Sufficiently Numerous**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1); see also *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 608 (N.D. Cal. 2004); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Although there is no hard and fast rule concerning the

size of a proposed class, "[g]enerally speaking, courts will find that the 'numerosity' requirement has been satisfied when the class comprises 40 or more members, and will find that it has not been satisfied when the class comprises 21 or fewer." *Ansari v. New York Univ.* (SD NY 1998) 179 FRD 112, 114; *Menagerie Prods. v. Citysearch*, No. CV 08-4263 CAS (FMO), 2009 WL 3770668, at *4 (C.D. Cal. Nov. 9, 2009). Here, the numerosity requirement is satisfied because hundreds of thousands of Clean Diesel Vehicles were sold in the United States during the Class Period (See Vendler Dec., Exhibit "B" -- CARB's September 18, 2015 notice to VW which specifies that there are at least 500,000 VW Clean Diesel Vehicles that were sold in the United States).

### 2. Questions of Law and Fact Common to the Class Exist.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This provision is neither exacting nor difficult to satisfy. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."). Indeed, a single significant common issue is sufficient to satisfy Rule 23(a)(2). *In re THQ, Inc. Secs. Litig.*, No. CV00-1783AHM (EX), 2002 WL 1832145, at *11 (C.D. Cal. Mar. 22, 2002); *Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 589 (9th Cir. 2012). In short, class members' claims must "depend upon a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Id*. at 588 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)).

The questions of law and fact that are common to the proposed class include:

a. Whether VW misrepresented the true nature of the VW Clean Diesel Vehicles to consumers in advertisements and written publications

concerning the characteristics of its supposedly environmentally Clean Diesel Vehicles

b.  Whether VW acted intentionally in making false claims about the characteristics of its Clean Diesel vehicles;

c.  Whether VW's marketing material for its Clean Diesel Vehicles which claim to be environmentally "clean" and made in compliance with federal and state emission standards violate the "unlawful, unfair or fraudulent" prongs of California's Unfair Competition Law or constitute false advertising under that Law;

d.  Whether VW's misrepresentations concerning the VW Clean Diesel Vehicles would be misleading to a reasonable consumer;

e.  Whether VW knew, or by the exercise of reasonable care should have known, that the misrepresentations and false advertising concerning the VW Clean Diesel Vehicles would be misleading to a reasonable consumer;

f.  Whether VW should be enjoined from engaging in the conduct complained of herein;

g.  Whether VW has been unjustly enriched through the wrongful conduct set forth herein;

h.  Whether punitive damages should be assessed against VW and in what amount;

i.  Whether VW misrepresented information contained in its applications for certificates of conformity for the VW Clean Diesel vehicles to the EPA and similar state environmental agencies concerning the auxiliary emission control devices installed in each of the vehicles;

j.  Whether VW installed defeat devices in each of the VW Clean Diesel Vehicles designed to reduce the effectiveness of the emission control system under conditions which may reasonably be expected to be

1    encountered in normal vehicle operation and use;

2    k.    Whether VW's recall program of its vehicles is adequate and what the

3          legal effect of that recall is upon class members;

4    l.    Whether VW's misrepresentations concerning the VW Diesel Vehicles'

5          emissions were in breach of VW's express and implied warranties to the

6          contrary.

7    These questions further all arise from the same common nucleus of facts and

8    law.  See, e.g., *Parkinson, supra,* (finding commonality where "plaintiffs' central

9    common question is whether the 2003 manual-transmission Tiburon suffered from a

10   flywheel defect").  Consequently, the determination of these common issues will

11   resolve the central issues of this case for all Class Members in one blow.  Based

12   thereon, the commonality requirement is satisfied.

13          **3.    Plaintiff's Claims Are Typical of Class Members' Claims.**

14   Rule 23(a)(3) requires that "the claims or defenses of the representative parties

15   are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "Under

16   the rule's permissive standards, representative claims are 'typical' if they are

17   reasonably coextensive with those of absent class members; they need not be

18   substantially identical."   *Hanlon*, 150 F.3d at 1020.   While some degree of

19   individuality is to be expected in all cases, that does not necessarily defeat typicality.

20   See *Wolin v. Jaguar Land Rover N. Am.*, LLC, 617 F.3d 1168, 1175 (9th Cir. 2010)

21   (finding that typicality is satisfied despite differences in "factual circumstances" and

22   remedies) (citing *Lymburner*, 263 F.R.D. at 540, with approval); see also *Staton v.*

23   *Boeing*, 327 F.3d 938, 957 (9th Cir. 2003).  The "focus should be on the defendants'

24   conduct and plaintiff's legal theory, not the injury caused to the plaintiff.*" Costelo v.*

25   *Chertoff*, 258 F.R.D. 600, 608 (C.D. Cal. 2009) (quoting *Simpson v. Fireman's Fund*

26   *Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005)).

27   Here, Plaintiff's claims are typical of the claims of the proposed class because

28   they all arise from the same (admitted) wrongful conduct by VW, namely that VW

engaged in false advertising and violated environmental protection laws.  Because VW's publicity campaign advertising its Clean Diesel Vehicles was national in scope, each of the Class Members were uniformly subjected VW's false and misleading statements, advertisements, and commercials concerning the supposed "clean" nature of the VW Clean Diesel vehicles.  In this regard, this case is like *Wolin* which found typicality where the class representatives alleged that "they, like all prospective class members, were injured by a defective alignment geometry in the vehicles," and where "[the class representatives] and the class seek to recover pursuant to the same legal theories: violation of consumer protection laws, breach of warranty, and unjust enrichment.").  *Id.* at 1173.  Here, too, each of the class members' claims all arise from their purchase or lease of a VW Clean Diesel Vehicle that was falsely advertised as being "clean" and environmentally compliant by VW when it was not. Accordingly, the typicality requirement is satisfied.

### 4. Plaintiff Will Fairly And Adequately Represent The Class.

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requires: (i) the proposed representative plaintiff does not have conflicts of interest with the proposed class; and (ii) the plaintiff is represented by qualified and competent counsel.  See *Hanlon*, 150 F.3d at 1020; *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 525 (C.D. Cal. 2012).  The first factor—that there is no conflict of interest—only requires similarity, not identity, of interests, and it precludes only adverse interests.  *Satchell v. FedEx Corp.*, Case No. 03-02659 SI, 2005 WL 2397522, at *8 (N.D. Cal. Sept. 28, 2005).  To assure "adequate" representation, the class representative's personal claim must not be inconsistent with the claims of other members of the class.  *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000).  Hypothetical conflicts do not preclude a finding of adequacy.  If and when the conflicts become real, the court can certify subclasses with separate representation of each, if consistent with manageability.  *Kohen v. Pacific*

*Investment Mgmt. Co. LLC*, 571 F3d 672, 680 (7th Cir. 2009).  Where, as here, the claims of the Class members and named Plaintiff are virtually coextensive, there is no conflict.  *General Tel. Co. v. Falcon*, 457 U.S. 147, 157-58, n.13 (1982).

Here, Mr. D'Angelo's interests are completely aligned with those of the proposed class; each has suffered economic loss from the same misrepresentations communicated nationwide by VW.  Likewise, Plaintiff's counsel is "adequate."  In retaining David Vendler of Morris Polich and Purdy LLP ("MPP"), Plaintiff has employed counsel with the qualifications, experience, and resources to vigorously prosecute this action.  See Vendler Dec.,¶ 9-25.  Further, if, as Plaintiff expects, his consolidation motion is granted, additional plaintiffs' counsel will be available to assist MPP with the prosecution of the case.

### D.    The Proposed Class Satisfies Rule 23(b)(3)'s Predominance Requirement.

Because of the nature of Plaintiff's claims—fraudulent misrepresentations concerning the true nature of the VW Clean Diesel Vehicles—Plaintiff seeks certification under Rule 23(b)(3), which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating of the controversy." Fed. R. Civ. P. 23(b)(3).  Predominance does not demand that the common issues be identical so long as there is an essential common factual link between all Class members and the defendant for which the law provides a remedy.  *Yokoyama v. Midland Nat. Life Ins. Co*., 594 F.3d 1087, 1093 (9th Cir. 2010).  "There is no definitive test for determining whether common issues predominate, however, in general, predominance is met when there exists generalized evidence which proves or disproves an [issue or] element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position."  *Galvan*, 2011 WL 5116585, at *8 (quoting *Withers v. eHarmony, Inc.*, CV 09-2266-GHK (RCx), Order Denying Mot. to Cert. Class,

Docket No. 13 (June 2, 2010)).  See also *Dukes*, 131 S. Ct. at 2566 (the predominance inquiry is meant to "tes[t] whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  The main concern is "the balance between individual and common issues."  *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009).

Common issues predominate in this case because the evidence necessary to establish Plaintiff's claims is common to all members of the Class (i.e. - they would all seek to prove that their VW Clean Diesel Vehicles were not "clean" and did not meet federal and state emission standards, despite representations by VW to the contrary).  Indeed, VW has essentially admitted commonality exists by stating that it will implement a recall program to fix the defect it admits exists in its vehicles.  See Vendler Dec., Exhibit "K."

The evidence to prove the classes' claims will be the same regardless of whether the class is 100 members or 500,000 and will include:  (1) VW's admissions of wrongdoing; (2) VW's representations, marketing, and advertisements used to sell its vehicles; (3) VW's development, testing, and decisions to deceive the EPA and CARB as well as the general public concerning the existence of the Defeat Device to; and (4) the manner in which VW's fraudulent activities were ultimately discovered by the EPA and CARB.  See, e.g., *Wolin*, 617 F.3d at 1173 (finding that all of the allegations regarding a common defect, the defendant's failure to reveal material facts in violation of consumer-protection laws, and the defendant's unjust enrichment "are susceptible to proof by generalized evidence.")  Here, the case for commonality is even stronger for each of Plaintiff's causes of action since VW has admitted that it committed the wrong that is the lynchpin of all of the claims alleged in the Complaint.

### 1.    Plaintiff's CLRA Claim.

Common issues predominate with respect to Plaintiff's CLRA claim.  Causation for CLRA claims can be demonstrated as to an entire class by establishing that material misrepresentations or omissions have been made to the class.  *Keegan*, *supra*,

284 F.R.D. at 530 (citing *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011)).

While numerous common issues exist with respect to Plaintiff's CLRA claim, by far the most important is whether VW represented its Clean Diesel vehicles as having properties or characteristics that it did not have. See *Parkinson, supra,* at 258 F.R.D. 593 and 596 (predominance with respect to CLRA claim was met where automaker accused of concealing flywheel defect) and *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526-27 (N.D. Cal. 2004)). See also, *In re Steroid Hormone Product Cases*, 181 Cal. App. 4th 145, 157 (2010) (class action claim appropriate where defendant sold misbranded and illegal steroid product – "the question that must be answered in this case is whether a reasonable person would find it important when determining whether to purchase a product that it is unlawful to sell or possess that product. It requires no stretch to conclude that the proper answer is 'yes'"). Here, VW's products were just as illegal when sold as the supplements with the undisclosed steroids sold by GNC and a class action is likewise appropriate to redress the wrong VW has caused by representing to consumers that its "Clean Diesel Vehicles" were emissions compliant when they were not. Thus Plaintiff's CLRA claim satisfies the predominance requirement.[9]

### 2.    Plaintiff's Fraud and Negligent Misrepresentation Claims.

Predominance is also satisfied for Plaintiff's nationwide fraud and negligent-representation claims. As with Plaintiff's CLRA claim, both have for their lynchpin the claim that VW concealed material facts concerning emissions compliance. (See Complaint at ¶¶ 27-35). Regardless of whether the misrepresentations were

---

[9] It is also indisputable that Plaintiff meets the 3 other factors for **mandatory** certification of his CLRA claim under *Hogya*, namely that: (1) it is impracticable to bring all members of the class before the court; (2) the claims or defenses of the representative plaintiffs are typical of the claims or defenses of the class; and (3) that the representative plaintiffs will fairly and adequately protect the interests of the class. As such, this Court must certify at least the CLRA subclass.

intentional or not, VW's misrepresentations were made with the intent to induce Plaintiff and the Class members into purchasing VW Clean Diesel Vehicles at a premium.  And it is VW's scheme of asserting the underlying misrepresentations and "not the details of any individual's experience that forms the nucleus of the class claims."  *Joint Equity Comm. of Investors of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.*, 281 F.R.D. 422, 430 (C.D. Cal. 2012) (quoting *Menagerie Prods.*, 2009 WL 3770668, at *5); see also See *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2009) (reversing denial of class certification where plaintiffs based their lawsuit on nondisclosures in standardized written forms) and *Rodman v. Safeway, Inc.*, 2014 WL 988992 *11 (N.D.Cal. 2014) (Class action plaintiffs can avoid the need to show each class member's individual reliance by resorting to California law's presumption of common reliance where the entire class saw the misrepresentations or was exposed to a pervasive long-term advertising campaign.)   Predominance is thus satisfied for the fraud and negligent misrepresentation claims.

### 3.   Plaintiff's Unfair Business Practices Claim.

Common issues predominate through Plaintiff's UCL claim, again because the same common proof used to establish a violation of the CLRA can be used for Plaintiff's UCL claim. *Keegan, supra,* 284 F.R.D. 533. Furthermore, "relief under the UCL is available without individualized proof of deception, reliance and injury."  *Id*. As with Plaintiffs' CLRA claim, there is "a presumption, or at least an inference, of reliance" because Plaintiff and the proposed class can demonstrate that the alleged misrepresentations concerning emissions standards and compliance was material and uniform class wide.  *Id*. at 533-34; *Parkinson v. Hyundai Motor Am.*, *supra* at 258 FRD 596-597 (defendant's alleged knowledge of a defect presents common issues for the CLRA and UCL claims because, if materiality is shown, reliance and causation may be presumed as to the entire class); See also *Keegan*, *supra,* 284 F.R.D. 533 (C.D. Cal. 2012) (distinguishing *Am. Honda Motor Co., Inc. v. Super. Ct.*, 199 Cal.

App. 4th 1367, 1377 (Cal. App. 2d Dist. 2011)).

### 4. The False Advertising Claim.

Common issues also predominate for Plaintiff's claim for violations of California's False Advertising Law. Plaintiff alleges that VW caused to be made or disseminated throughout California and the United States, through numerous advertising, and marketing mediums (i.e., TV, print, internet, billboard, etc.) statements that were untrue, misleading, and which VW knew to be untrue and misleading. By marketing its VW Clean Diesel Vehicles as low-emission, fuel-efficient cars, VW catapulted itself to becoming largest seller of diesel passenger vehicles in the United States. Plaintiff and Class Members were even convinced to pay more for their vehicles than they otherwise would have paid for similar modeled vehicles that did not purport to be "clean" and fuel efficient.

Had Plaintiff and Class Members known the truth, they would not have purchased/leased their vehicles and/or paid as much for them. See *In re Tobacco II Cases*, JCCP 4042, 2001 WL 34136870, at *3 (Cal. Super. Ct. Apr. 11, 2001) (finding that common issues predominated for all class claims brought under Cal. Bus. & Prof. Code §§ 17500, et seq. despite the fact that "a myriad of distinct issues exist as to each class member's exposure to the alleged deceptive marketing [and] reliance thereon" because the class "assert[ed] identically that Defendants, ... by way of deceptive advertising and marketing acts, misled the [] public" and "targeted the putative class uniformly in an alleged class-wide effort to seduce and induce people" to purchase their product).

### 5. The Warranty Claims.

The breach-of express and implied warranty claims raised by Plaintiff under the Song-Beverly Consumer Warranty Act, California's Commercial Code, and the Magnuson-Moss Warranty Act also satisfy the predominance standard. Here, Plaintiff alleges that in selling its vehicles, VW expressly and impliedly warranted that the VW Clean Diesel Vehicles met federal and state emissions standards, and that the VW

Clean Diesel Vehicles were in fact non-compliant with regard to federal and state emissions standards.  As such, Plaintiff claims that VW breached its express and implied warranties.  The main questions are therefore whether the VW Clean Diesel Vehicles' uniform non-compliance with regard to emissions standards, and VW's secret installation and use of the defeat device breached VW's express and implied warranties and whether that breach occurred on a class-wide basis.  Consequently, Plaintiffs' express-warranty claims satisfy the predominance standard.  (See e.g., *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 983 (N.D. Cal. 2014) (evaluating applicability of both California's Song-Beverly Consumer Warranty and Commercial code claims as well as the Magnuson-Moss Warranty Act claims raised by a class of plaintiffs similar to those at issue here against an auto manufacturer).

### 6.    Damages and/or Restitution can be Computed Uniformly.

Plaintiff's damage model was very well put by Representative Janice Schakowski at the September 8, 2015 congressional hearing – "VW's customers should be able to get their money back, all of it."  See Vendler Dec., Exhibit "L."  But even if that remedy is not granted, individual damage calculations can be calculated by a single formula based on the make, model and year of the Class Member's vehicle.  There are a number of organizations that very closely track car values.  Most well known is KBB.com, which publishes the "Kelly Blue Book."  The loss in value of VW's vehicles (and any damages from loss in fuel economy) can be established by expert testimony.   But even if this were not so, it is well established that the need to perform individual damage calculations "cannot defeat class certification." *Yokoyama*, 594 F.3d at 1094; See also *Blackie v. Barrack*, 524 F.2d 891, 901, 905 (9th Cir. 1975) (holding that differences in individual damage will not defeat class certification).

### E.    The Class Action Method is Superior.

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am.*, LLC, 617 F.3d 1168, 1175 (9th Cir. 2010).   Superiority is

1   fulfilled "when 'no realistic alternative' to a class action 'exists.'"   *Valentino v.*
2   *Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996)).

3       Each of the relevant Rule 23(b)(3) factors that guide the superiority inquiry is
4   satisfied here. First, With respect to factors (A) and (C), the reimbursement amount of
5   the premium paid for each VW Diesel Vehicle and the concomitant drop in value of
6   these vehicles is too low, and the factual, legal, and financial burdens of litigating for
7   a lump-sum payment are too high to motivate many Class members to litigate their
8   claims on an individual basis.  See *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1023
9   (9th Cir. 1998). (where "the alternative methods of resolution are individual claims for
10  a small amount of consequential damages .... litigation costs would dwarf potential
11  recovery"); *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 486 (C.D. Cal.
12  2012) (same).

13      Many Class Members will not bring individual lawsuits to obtain a lump-sum
14  payment, especially given the difficult and complex issues about (1) how VW hid the
15  implementation of the Defeat Devices from the EPA and CARB, (2) how the EPA and
16  CARB's emission tests are performed, (3) the necessity to engage in overseas
17  discovery (for the punitive damage aspect of the case), and (4) the logistical issues
18  involved in obtaining expert and other technical evidence against a well-funded,
19  global corporation like VW, which has retained experienced and savvy counsel to
20  represent it.  See *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 549 (C.D.
21  Cal. 2012) ("The funds required to marshal the type of evidence, including expert
22  testimony, that will be necessary to pursue these claims against well-represented
23  corporate defendants would discourage individual class members from filing suit
24  when the expected return is so small.").

25      Consequently, class certification efficiently streamlines and conserves both
26  individual and judicial resources.  See *Hartless v. Clorox Co.,* 273 F.R.D. 630, 639
27  (S.D. Cal. 2011) ("multiple individual claims could overburden the judiciary"), aff'd
28  in part, 473 F. App'x 716 (9th Cir. 2012).

Factor (B)—the extent and nature of any similar litigation—also favors certification of this action. Through Plaintiff's counsel's effort in filing the first MDL petition, numerous similar lawsuits filed nationwide will likely ultimately be consolidated.  To date, more than 100 federal class-action lawsuits based on essentially the same facts and legal theories at issue here have been filed against VW.[10]  Through the MDL process, Plaintiff has requested the MDL Panel to transfer those cases to this Court and to consolidate those actions with this litigation. Additionally, as this Court is aware, Plaintiff has requested a status conference in this case to discuss beginning the international discovery process overseas (given the lengthy nature of going through the Hague Convention's processes and procedures for taking evidence in Germany.

The final superiority factor regarding manageability emphasizes the issue of whether "the complexities of class action treatment outweigh the benefits of considering common issues in one trial ...." *McKenzie v. Fed. Ex. Corp.*, 275 F.R.D. 290, 302 (C.D. Cal. 2011).  The question is not "whether this class action will create significant management problems," but rather "whether it will create relatively more management problems than any of the alternatives." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1273 (11th Cir. 2004), abrogated in part on other grounds by *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).  A manageability concern "will rarely, if ever, be in itself sufficient to prevent certification of a class." *Id.* at 1272.  See also *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) ("failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and 'should be the exception rather than the rule.").  Also,

---

[10] It is expected that VW will claim that it is premature to certify any class and/or that doing so would potentially interfere with the consolidation proceeding.  Not so.  Apart from the language of Rule 23 requiring certification to be conducted as soon as practicable, this Court's own local rule requires that it be done within 90 days. Moreover, for at least the California sub-classes, it makes total sense to have a California jurist evaluate those no matter in which court these cases eventually end up.

for Plaintiff's CLRA claim, manageability is not among the statutory factors to be considered.  So, if Plaintiff meets the minimum requirements for certification of a class under the CLRA, there is no reason (from a manageability perspective, at least) not to certify the other claims as there will be a class action in any event.

But even if this were not true, Plaintiff does not predict any serious manageability difficulties in maintaining this class action, and certainly none that would justify forcing thousands of individuals to pursue individual actions alone. After all, by its recall, VW is essentially managing its own class.[11]

## IV.   MORRIS POLICH & PURDY LLP SHOULD BE APPOINTED CLASS COUNSEL

Pending consolidation, Morris Polich & Purdy LLP should be appointed class counsel and Mr. D'Angelo as the named class representative.  So it is clear, Plaintiff is not seeking to be named class counsel to the exclusion of any other counsel later being named as such.  In fact, Plaintiff welcomes the assistance of other plaintiff counsel post-consolidation.  However, the class will not be prejudiced in the meantime by the appointment of MPP as class counsel.  Through MPP, Plaintiff was not only among the first to file against VW, but he filed the first MDL petition.  MPP has also moved expeditiously to file this motion and to generally move his case forward.

## V.   CONCLUSION

For the reasons specified above, Plaintiff's Motion for Class Certification should be granted.

---

[11] Any argument by VW that its recall announcement might obviate the need for a class action is ridiculous.  First of all, the recall will not eliminate the harm suffered by the Classes.  Fuel economy and performance will certainly drop post recall since the defeat devices were installed precisely to boost these characteristics.  Second, the value of these vehicles has plummeted since VW's fraud came to light.  Third, VW's recalling these cars does not take away from the fact that VW defrauded its customers in the first instance.  Punitive damages have been alleged against VW for this fraud and VW's recall cannot eliminate those.

1   Date: October 19, 2015                    MORRIS POLICH & PURDY LLP

2

3                                             By:_____/s/ David J. Vendler_____

4                                                 David J. Vendler
                                                  Kevin M. Pollack
5

6                                             Attorney for Plaintiff CHRISTOPHER J.
                                              D'ANGELO and all those similarly situated
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28